IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| RITA COBBS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 01-B-1527-NE |
| ) | |
| CENTRAL UNITED METHODIST ) | |
| CHURCH OF DECATUR, ) | |
| ) | |
| Defendant. ) | |

**ENTERED**
**SEP 29 2003**

### MEMORANDUM OPINION

This case is presently pending before the court on Motion for Summary Judgment, filed by defendant, Central United Methodist Church of Decatur. (Doc. 31.) Plaintiff, Rita Cobbs, has sued defendant, her former employer, alleging she was subjected to a hostile working environment due to sexual harassment in violation of Title VII. Defendant contends that it is entitled to judgment as a matter of law as to plaintiff's claim because it took prompt and appropriate remedial action to end the harassment, and because plaintiff's allegations of harassment occurring prior to February 25, 2000, are barred by the doctrine of laches.

The parties have fully briefed defendant's Motion for Summary Judgment and the court heard oral argument. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 31), is due to be denied.[1]

---

[1] At the conclusion of oral argument on the motion, the court informed the parties that defendant's motion would be granted. However, upon further consideration of the facts and law, the court is of the opinion that the motion should be denied.



## I. <u>STANDARD OF REVIEW</u>

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in her favor. *See id.* at 255. Nevertheless, the non-moving party need not be given the benefit of every inference but only of every **reasonable** inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. STATEMENT OF FACTS

Plaintiff, Rita Cobbs, began working for defendant, Central United Methodist Church of Decatur, in 1997. (Doc. 32, Ex. A at 18-19.) She worked full-time as a secretary in the church office. (*Id.* at 19.) Plaintiff reported to Hal Noble, defendant's Senior Pastor, who was responsible for supervising plaintiff. (*Id.* at 18, 20.) Sheats Summerford, a retired minister, worked part-time for defendant, providing visitation services for defendant's home bound and hospitalized members. (*Id.* at 21, doc. 32, Ex. B at 34-35.) Summerford did not have actual authority to supervise plaintiff. (Doc. 32, Ex. B at 38.) However, plaintiff testified that she believed Summerford had such authority because of his position as a minister.[2] (Doc. 32, Ex. A at 21-22.)

In December 1998, Summerford began calling plaintiff and talking explicitly about sex. (Doc. 32, Ex. A at 48-49.) From December 1998 until February 1999, Summerford called plaintiff everyday and said "something dirty or explicit" each day. (*Id.* at 49.) He told plaintiff if she told anyone about the calls, no one would believe her. (*Id.* at 42.)

In February 1999,[3] while in the church office, Summerford grabbed plaintiff and pushed his face into her breasts and "wallow[ed] there for a while." (*Id.* at 46.) When he

---

[2]When asked about whether Summerford knew that he did not have authority to supervise plaintiff, Noble replied, "That's a good question." (Doc. 32, Ex. B at 38.)

[3]Defendant contends that this incident occurred in January 1999. (Doc. 32, Ex. B at 47.) For purposes of summary judgment, the court views the facts in the light most favorable to plaintiff and resolves all disputes in her favor. *See Liberty Lobby*, 477 U.S. at 255. Therefore, the court assumes for summary judgment that this incident occurred in February, not January, of 1999.

3

released her, "he grabbed ahold of [her] breasts at [her] nipples and started massaging." (*Id.*) Summerford then told her that she would lose her job if she ever told anyone what he had done. (*Id.* at 50.) Plaintiff believed that Summerford could have made her lose her job or cause her to quit. (*Id.*)

Plaintiff reported the physical incident to Noble in late February 1999.[4] (Doc. 36, Ex. 1 at 4.) Plaintiff did not tell Noble about the telephone calls; she only told him about Summerford grabbing her. (Doc. 32, Ex. A at 51-52.) Plaintiff did not tell Noble about the calls because "[t]hey were just too dirty" and because she "felt like if [Noble] knew that [Summerford] had touched [her], that it would be over and [Summerford] would not call [her] again." (*Id.* at 51.) Plaintiff told Noble "exactly what had happened" with regard to the grabbing incident and that she "wanted someone to be in [the] office when he [came] around or when he called." (*Id.* at 52.).

In response to plaintiff's report, Noble told her that Summerford was "sick" and that she "could knock him flat the *next* time." (*Id.* at 55 (emphasis added).) Noble told plaintiff that he would not tolerate sexual harassment. (*Id.* at 57.) However, he did not inform plaintiff of any action he intended to take or of any action he actually took to prevent further harassment. (*See* 57-60, 63.) Noble testified that he took plaintiff's complaint as true and immediately sought to remove Summerford from defendant's staff. (Doc. 32, Ex. B at 58; Ex. C at 1.)

---

[4]*See* note 2, *supra*.

Defendant contends that, after plaintiff complained, Noble met with George Godwin (Staff Parish Chairperson) and David White (Chair of the Finance Committee) on January 8, 1999.[5] (Doc. 32, Ex. B at 51-52.) Noble testified that, at this meeting, he told White and Godwin that he "had received some information about Sheats Summerford's behavior that was inappropriate, and he could no longer be a member of the church staff." (*Id.* at 52.) Godwin, however, testified that he met with Noble alone. (Doc. 32, Ex. D at 18-19.) Godwin also testified that he and Noble decided it was a "natural time" for Summerford to retire, because defendant had hired a Youth Director, which had caused "tremendous budget restraints, and had allowed the Associate Pastor time to do more visiting. (*Id.* at 18.) According to Godwin, Noble did not mention Summerford's "inappropriate" behavior. (*Id.* at 19.)

Following this meeting, Godwin and White met with Summerford and told him it was time for him to retire. Summerford agreed. (*Id.* at 18.) The fact that defendant retired Summerford in January 1999 is undisputed. (*See* doc. 32, Ex. B at 53.) The only remedial action defendant contends it took in response to plaintiff's complaint was to retire Summerford. (*See* Def. Br. in Supp, of Mot. for Summ. J. at 15.)

Whether plaintiff complained of sexual harassment before or after Summerford's retirement is a disputed issue of fact. (*Compare* doc. 36, Ex. 1 at 4 *with* doc. 32, Ex. B at 51-52.) Viewing the evidence in the light most favorable to plaintiff, the non-moving party, and

---

[5]*See* note 2, *supra*.

resolving all disputed issues in her favor, the court finds, for purposes of summary judgment, that defendant took no action following plaintiff's complaint to remedy the alleged hostile environment or to prevent further incidents of sexual harassment because Summerford retired ***before*** plaintiff complained he had harassed her.

Plaintiff claims Summerford continued to come to the office approximately three times a week after he retired. (Doc. 32, Ex. A at 70-71.) He also called plaintiff every day, and sometime he called several times in one day. (*Id.* at 66, 72-73.) Noble testified that he was aware that Summerford had continued visiting church members after he retired, (doc. 32, Ex. B at 67), but Noble only rarely saw him in the church office, (doc. 32, Ex. C at 2). However, the evidence is undisputed that there were no further physical incidents between plaintiff and Summerford. (Doc. 32, Ex. A at 83.)

Summerford's daily telephone calls, which were always sexually explicit, would last up to thirty minutes, during which time plaintiff stayed on the telephone as long as Summerford wanted to talk and let him say anything he wanted to say because she claims she was afraid of losing her job. (*Id.* at 68, 73.) Plaintiff claims that during these telephone calls, Summerford did the majority of the talking and she just listened. (*Id.* at 209.)

Summerford made several calls to plaintiff at work on February 25, 2000, the last day he ever called her. (Doc. 32, Ex. A at 75.) During the last call on that day, plaintiff became disoriented and unable to think clearly. (*Id.*) She contends she "snapped" due to the constant sexual harassment. (*Id.* at 75-80.) Her husband came to get her from work and took her to the doctor, and, ultimately, to Decatur General West hospital. (*Id.* at 78.) Plaintiff was

6

hospitalized for approximately two weeks. (*Id*. at 85.) After her release from the hospital, plaintiff went back to work. (*Id*. at 87.)

On March 17, 2000, shortly after plaintiff had returned to work, the temporary employee who had been working in her place, Genie Shaffer, told plaintiff that Summerford had just touched her breasts. (*Id*. at 89.) Plaintiff, at this point, decided to complain about Summerford's harassment again. (*Id*. at 90.)

Because Noble was out of the country, plaintiff contacted Godwin. (*Id*.; doc. 32, Ex. D at 19-20.) Noble learned from Godwin about the Shaffer incident while he was out of the country; when he returned he met with Shaffer and plaintiff. Doc. 32. Ex. B at 109.) He asked them to prepare incident reports for him and also, to inform him anytime Summerford was on church property and to direct any calls from Summerford to him. (*Id*.)

Plaintiff submitted an incident report, which outlined the telephone calls she had received from Summerford since 1999. (Doc. 32, Ex. A, ex. 1.) In this incident report, plaintiff described the frequency and the nature of the telephone calls. (*Id*.) She also stated:

> I am embarrassed and feel very guilty that I did not put a stop to this in February 1999. Due to my lack of courage at the time, I have not only let this happen to the temporary helper, but also have taken confidential phone calls, during the past year, of ladies who live alone, but have been visited by Mr. Summerford in the hospital or in their homes. These ladies said "he acted inappropriately." As I told Rev. Noble, I promised these ladies that I would never reveal their names, I prefer to keep this promise.

(*Id*.; *see also* doc. 32, Ex. A at 99-100.)

The following day, Noble met with Godwin, Lay Leader Charles Langham, and Dennis Griffith, a counselor and member of defendant's congregation, about Summerford.

7

(Doc. 32, Ex. B at 106-07.) At this meeting, the group decided to immediately confront Summerford and "convince him that he needed to stay away from the offices of the church." (Doc. 32, Ex. D at 25-26.) Godwin, Langham, and Griffith met with Summerford at his home. (*Id.* at 31.) The meeting lasted approximately 45 minutes. (*Id.*) Summerford denied any wrongdoing at the outset; however, in the end, "he confessed . . . and was visibly shaken, very sad." (*Id.*) Summerford asked what this meant in terms of his relationship with defendant; they informed him that he was free to come and worship, but that he would not be allowed to come on the premises for any other reason. (*Id.* at 32.)

Following the meeting, plaintiff did not see Summerford again in the church office and he never called her again. (Doc. 32, Ex. A at 105-06.) She testified that Noble did not tell her what he had done to stop the harassment, but the harassment did stop. (*Id.* at 106.)

On April 10, 2000, Summerford committed suicide. (*Id.* at 120-21.) Plaintiff was hospitalized the next day after contemplating her own suicide. (*Id.* at 121.) She testified that she felt guilty and believed that Summerford's suicide was a direct result of her complaints and the actions of the defendant. (*Id.* at 120.)

After plaintiff was released from the hospital, she worked for a time and then requested another leave of absence. (*Id.* at 143.) Defendant continued her salary for a portion of her leave; the church covered her insurance during the entire leave period. (*Id.* at 143-44.)

In November, plaintiff came back to work again on a volunteer basis for approximately one week, then returned to full time. (*Id.* at 153.) Plaintiff tendered her

resignation effective December 31, 2001, on the advice of her doctor and therapist. (*Id.* at 30-31.) Plaintiff testified that she resigned due to the doctor's recommendation, due to memories of events, and in order to allow her to spend time with her family. (*Id.* at 30-32.)

Plaintiff claims that she did not report the continuing harassment because Summerford had told her that he would have her fired and because she was afraid he would kill her. (*Id.* at 61, 120.) Plaintiff also testified that she did not complain again until March 2000 because Noble had done nothing in response to her initial complaint. (*Id.* at 147-48.)

Defendant contends that it has an anti-harassment policy, but it admits the policy was not posted at the church. (Doc. 32, Ex. B at 91-92.) Defendant did not provide plaintiff with a copy of an anti-harassment policy or even tell plaintiff about the policy. (Doc. 32, Ex. A at 236.) Plaintiff testified that she knew that she should report sexual harassment to Noble, the Senior Pastor. (*Id.* at 157.)

### III. **DISCUSSION**

Defendant raises two issues in its Motion for Summary Judgment; it contends that it cannot be held liable for Summerford's sexual harassment because it took prompt and effective remedial action as soon as it had notice, and that it cannot be held liable for any conduct occurring prior to the February 25, 2000, based on the equitable defense of laches.

### A. PROMPT AND EFFECTIVE REMEDIAL ACTION

To establish her prima facie case of sexual harassment, Plaintiff must show:

(1) that . . . she belongs to a protected group; (2) that [she] has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment [was]

9

based on [plaintiff's] sex . . .; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment; and (5) a basis for holding the employer liable.

*Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999)(citing *Henson v. City of Dundee*, 682 F.2d 897, 903-05 (11th Cir. 1982)). For purposes of summary judgment, defendant concedes that plaintiff can prove the first four elements, but it contends plaintiff cannot establish a basis for holding it liable for the hostile work environment.

"An employer is negligent with respect to sexual harassment if it knew or should have known about the conduct and failed to stop it. Negligence sets a minimum standard for employer . . . ."[6] *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 759 (1998); *see also Miller v. Kenworth of Dothan*, 277 F.3d 1269, 1278 (11th Cir. 2002).

Thus, defendant can be directly liable is plaintiff proves that, after it received notice of the harassment, "it failed to take prompt remedial action; that is action reasonably likely to prevent the misconduct from recurring." *Reynolds v. CSX Transp., Inc.*, 115 F.3d 860, 867

---

[6]Plaintiff contends that she reasonably believed that Summerford was her supervisor, despite his retirement in January 1999; therefore, she argues that defendant is subject to vicarious liability for the hostile environment created by Summerford. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). Defendant may be liable for Summerford's exercise or threatened exercise of supervisory authority he did not actually possess, if plaintiff's belief he had such power was reasonable under the circumstances. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 759 (1998)("As a general rule, apparent authority is relevant where the agent purports to exercise a power which he or she does not have, as distinct from where the agent threatens to misuse actual power. . . . If . . . it is alleged there is a false impression that the actor was a supervisor, when he in fact was not, the victim's mistaken conclusion must be a reasonable one."). However, because the court finds that defendant's Motion for Summary Judgment is due to be denied because defendant has not established, as a matter of law, that it took prompt and appropriate remedial action, the court declines to decide Summerford's status.

(11th Cir. 1997)(internal quotations and citations omitted), *vacated on other grounds* 524 U.S. 947 (1998). "What is appropriate remedial action will necessarily depend on the particular facts of the case – the severity and persistence of the harassment, and the effectiveness of any initial steps." *Id.*

Defendant contends that Noble took action to end Summerford's employment as soon as he learned of plaintiff's complaint in January 1999. Defendant contends, "Noble took all of Cobbs's allegation as true, immediately met with church leaders to arrange Summerford's removal from the church staff, and before the end of January, Summerford was involuntarily retired." (Def. Br. in Supp. of Mot. for Summ. J. at 15.) It contends:

> Summerford's involuntary retirement and removal from church staff was reasonably designed to end the physical harassment about which Cobbs complained in early 1999, and the fact that harassing behavior continued in the form of telephone calls does not negate the legal adequacy of this action. Under the circumstances as Noble knew them in 1999, as relayed to him by Cobbs, his seeking to have Summerford removed from the church staff was a response reasonably calculated to end any further physical contact between Cobbs and Summerford. Noble did not know prior to March of 2000 that Summerford made explicit telephone calls to Cobbs before and after his retirement.

(*Id.* at 16-17.)

However, defendant's argument is dependent upon a finding that plaintiff complained to Noble of sexual harassment ***before*** Summerford retired. Plaintiff has presented evidence that she complained of sexual harassment ***after*** Summerford retired. Therefore, assuming plaintiff complained ***after*** Summerford retired, a reasonable jury could find that defendant

did *nothing* in response to plaintiff's complaint; and, under the circumstances "*nothing*" was not a prompt and effective remedial action.

Moreover, even assuming plaintiff complained before Summerford's retirement, the court finds genuine issues of material fact exist as to whether defendant's actions were sufficient to constitute "prompt and effective remedial action." According to defendant, Summerford was not told at the time of his "retirement" that complaints of sexual harassment had been made against him.

Because the court finds that there are disputed issues of material fact with regard to whether defendant took prompt and effective remedial action, defendant is not entitled to judgment as a matter of law.

**B.  LACHES – PLAINTIFF'S DELAY IN REPORTING SUMMERFORD'S CONTINUING HARASSMENT**

Defendant contends, "Due to [plaintiff's] lack of due diligence in filing a charge of discrimination, all discriminatory acts occurring prior to February 25, 2000 are time barred." (Def. Br. in Supp. of Mot. for Summ. J. at 18 (citing *United Air Lines v. Evans*, 431 U.S. 553, 558 (1997)).

"The equitable doctrine of laches will bar a claim when three elements are present: '(1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted.'" *Venus Lines Agency, Inc. v. CVG Intern. America, Inc.*, 234 F.3d 1225, 1230 (11th Cir. 2000)(quoting *Kason Indus., Inc. v. Component Hardware Group, Inc.*, 120 F.3d 1199, 1203 (11th

Cir.1997)). Defendant contends that it was "prejudiced in its ability to cure [plaintiff's] harassment, given [plaintiff's] admitted failure to notify anyone of it." (Def. Reply Br. in Supp. of Mot. for Summ. J. at 9.) However, the court finds that defendant has not established "undue prejudice" merely by alleging that plaintiff's delay in reporting continuing harassment caused it to allow the hostile work environment to exist for a longer period of time than it would have had plaintiff complained again.

Case law establishes that "undue prejudice" with regard to establishing a defense of laches refers to injury or harm to a party's ability to establish a claim or defense as a procedural matter. "To support a determination of laches, there must be more than simply an inexcusable delay; the party asserting laches must also establish that it has been prejudiced by the delay, that is, that the delay has 'cause[d] a disadvantage in asserting and establishing a claimed right or defense.'" *National Association of Government Employees v. City Public Services Board*, 40 F.3d 698, 709 (5th Cir. 1994)(quoting *Matter of Bohart* 743 F.2d 313, 327 (5th Cir. 1984). "Prejudicial harm does not occur merely because one loses what he otherwise would have kept. He who would invoke laches must show a delay which has subjected him to a disadvantage in asserting and establishing his claimed right or defense." *Esso Intern., Inc. v. S.S. Captain John*, 443 F.2d 1144, 1150 (5th Cir. 1971);[7] *see also* Davis,

---

[7]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Penny, ALABAMA EQUITY § 1-5(d) (4th ed. 2002)("The classic elements of undue prejudice include the unavailability of witnesses, changed personnel, and the loss of pertinent records.).

Defendant contends that it was "prejudiced" because it would have stopped the harassment sooner had it but known that the harassment was continuing. (Def.'s Br. in Supp. of Mot. for Summ. J. at 20.) However, defendant's ability to cure the harassment sooner is not "prejudice" for purposes of proving laches. Certainly, defendant can assert that its actions were reasonable under the circumstances and that plaintiff's delay in complaining a second time, not defendant's inadequate response to her first complaint, was the cause of her damages. However, defendant has not presented any evidence to indicate that its "ability" to assert or to prove its position was disadvantaged by plaintiff's delay in reporting to defendant that Summerford continued to harass her in the year following her first complaint. Thus, it has not established undue prejudice.

Defendant's Motion for Summary Judgment, seeking to limit plaintiff's hostile-environment claim to the incident on February 25, 2000, on the ground that plaintiff unduly delayed in giving defendant a second notice of continuing harassment, is due to be denied.

## CONCLUSION

Based on the foregoing, defendant's Motion for Summary Judgment is due to be denied. An Order in conformity with the Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this __26th__ day of September, 2003.

_____
SHARON LOVELACE BLACKBURN
United States District Judge